UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:                                              Case No. 13-80171
                                                    Chapter 11
ROYAL PRIESTHOOD MINISTRIES
INTERNATIONAL, INC.,

      Debtor.
_____

ROYAL PRIESTHOOD MINISTRIES
INTERNATIONAL, INC. and
JAMIE S. WILLIAMS,

      Plaintiffs,

v.                                                  Adv. Proc. 13-08014

CITIZENS TRUST BANK and
FNF SERVICING, INC.,

      Defendants.

## MEMORANDUM OPINION

In this adversary proceeding, the plaintiffs contend that the defendants breached the parties' contract by failing to pay hazard insurance premiums on a policy covering Royal Priesthood Ministries International's (hereinafter "RPMI") real property. Thereafter, the plaintiffs allege that the property was damaged on two separate occasions resulting in an uninsured loss to the plaintiffs.

Trial was held on May 15, 2014, in Opelika, Alabama. At trial, the plaintiffs were represented by their counsel, Robert E. Kirby, Jr., and the defendants were represented by their attorneys, Stephen B. Porterfield, Thomas B. Humphries, and Cassandra J. Harris. For the following reasons, judgment will enter in favor of the defendants.

## JURISDICTION

This court's jurisdiction over this dispute is derived from 28 U.S.C. § 1334 and from an order of The United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the bankruptcy court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). However, the dispute here, one alleging a breach of contract, is not a core proceeding under 28 U.S.C. § 157. As a result, this court's jurisdiction, absent consent of all parties, would not reach to the entry of a final judgment or order. Here, the parties expressly consent to this court entering final judgment.

## FINDINGS OF FACT

RPMI purchased a home located at 2300 St. Andrews Way, Phenix City, Alabama in 2003.[1] RPMI used the property not only as a parsonage for its minister, but also, as a facility to host group retreats. Citizens Trust Bank (hereinafter "Citizens") financed the purchase and took a mortgage on the subject property.

On July 30, 2010, RPMI's loan with Citizens was refinanced. That refinancing was accomplished in two separate notes. Both notes were signed by RPMI's president, Dr. Jamie S. Williams. Dr. Williams testified that she was also a guarantor of both notes. The first note in the amount of $234,077.21 had a one-year term.[2] Payments, however, were amortized over twenty years with the unpaid balance ballooning on August 5, 2011. Further, the first note called for a payment of an additional $816.53 per month to be held by Citizens in escrow for the purpose of paying property taxes and hazard insurance. Citizens required the escrow account for taxes and insurance because of its history with RPMI where failure to pay ad valorem taxes and to maintain insurance coverage had previously occurred.

The second note comprising the 2010 refinancing was for

---

[1] Actually, when the home was originally bought in 2003, it was purchased jointly by RPMI and Oasis Church International, Inc. (hereinafter "Oasis"). In 2005, Oasis conveyed its interest in the property to RPMI, and thereafter, Oasis was merely a guarantor of the loan.

[2] See Plaintiff's Exhibit 2.

$126,041.57.$^3$  Under that note, RPMI was to pay interest only with the unpaid principal balance due on September 5, 2011.

Citizens engaged FNF Servicing, Inc., d/b/a LoanCare, (hereinafter "LoanCare") to service the RPMI's notes.  In turn, LoanCare engaged Assurant to manage the loan's escrow account.

Prior to the 2010 refinancing, RPMI purchased and paid for hazard insurance on the subject realty directly.  The Stevens Agency assisted the debtor in placing that coverage in April 2010 through Johnson & Johnson Insurance Company.  The policy had a one year term through April 24, 2011.

In April 2011, sufficient funds were on deposit in the escrow account to pay the hazard insurance premium.  Before the end of the hazard insurance policy term, LoanCare made telephone calls on April 13, April 18, and April 21, 2011, to an insurance company seeking information concerning the policy's renewal.  Notations of those calls show that LoanCare was unsuccessful in obtaining the renewal information that it needed in order to pay the premium.$^4$

On April 27, 2011, storms caused damage to the subject realty.  Cracked glass and damage to the roof resulted in water entering the building.  Later, that water damage led to the development of extensive mold and mildew of the structure.

Dr. Williams testified that shortly after the damage occurred, she notified the Stevens Agency regarding a claim.  That testimony, however, is contradicted by the testimony of Jessica Marvets of the Stevens Agency.  Ms. Marvets stated that Johnson & Johnson does not permit claims to be filed by the insurance agency.  Instead, Johnson & Johnson requires that claims be made by the insured.  Therefore, Ms. Marvets contended that had Dr. Williams notified the Stevens Agency regarding a loss, that she, Dr. Williams,  would have been directed to file a claim directly with Johnson & Johnson.  Although Dr. Williams testified that she made several calls to Citizens, there is no evidence of these calls.  She also stated that she

---

$^3$See Plaintiff's Exhibit 3.

$^4$See Defendant's Exhibit 4, pages 700 -701.

never called Johnson & Johnson directly and never filed a written claim for the damage.

On May 1, 2011, LoanCare mailed a letter to Dr. Williams advising her that it needed information regarding the hazard insurance and requesting her assistance in obtaining that information.[5] Dr. Williams did not respond to LoanCare's letter. Instead, she told her assistants to disregard the correspondence in that the Stevens Agency was attending to the insurance matters.

On May 6, 2011, Johnson & Johnson sent notice of renewal of the hazard insurance policy to Dr. Williams. The notice also invoiced the premium noting that payment was due on May 20, 2011. Hence, the end of the one year insurance term did not automatically terminate the coverage. However, Dr. Williams did not provide the renewal notice and invoice to LoanCare or Citizens.

On June 1, 2011, LoanCare sent a second correspondence to Dr. Williams. As before, LoanCare requested information about the hazard insurance, but this time, also advised Dr. Williams that if that information was not forthcoming, forced placed insurance would be obtained. Again, Dr. Williams did not respond to LoanCare's request. Further and coincidentally on that same date, June 1, 2011, Johnson & Johnson gave Dr. Williams notice that the hazard insurance would be cancelled for non-payment of the premium on June 19, 2011.[6] Dr. Williams did not furnish LoanCare or Citizens with Johnson & Johnson's cancellation notice.

On June 3, 2011, the Stevens Agency received a copy of the Johnson & Johnson cancellation notice. According to Ms. Marvets, a Stevens Agency employee, this was the first time that anyone at the agency was made aware that the premium had not been paid.

On June 11, 2011, additional damage was done to the property. A pipe connected to the air conditioning system burst and allowed water to enter the interior of the building. Dr. Williams testified that she again called the Stevens Agency to report the damage. However, no claim was

---

[5] See Plaintiff's Exhibit 8.

[6] See Defendant's Exhibit 6.

ever filed with Johnson & Johnson concerning this incident of damage.

Sometime in the month of July 2011, after receiving a call from the Stevens Agency, Yolanda Munford, a Citizens employee, telephoned LoanCare to obtain information regarding the forced placed insurance. From that call, Ms. Munford learned of LoanCare's unsuccessful efforts to renew the policy. With this information, Ms. Munford contacted the Stevens Agency in order to relay what she had learned about the insurance coverage; that is, how to cancel the forced placed coverage and reinstate the original Johnson & Johnson policy.

On July 28, 2011, Dr. Williams, in an effort to reinstate the hazard insurance policy, signed a statement that the realty had suffered no loss.[7] According, to Dr. Williams, that statement was not correct, and that she only signed the no loss statement in order to have the insurance policy reinstated. Indeed, the forced placed insurance coverage was ultimately cancelled, and LoanCare advised Dr. Williams of that cancellation on July 30, 2011.[8]

In October 2011, Dr. Williams sent an email message to Farrand Logan, a loan officer at Citizens, regarding the renewal of the loans. In that email, Dr. Williams refers to damage to the realty caused by a broken pipe but made no mention of any storm damage. According to Logan, this was the first written notice that Citizens received relating to any damage to the realty. This email was the only evidence of written notice of the damage. Dr. Williams testified that she never filed a formal claim for either occurrence of damage.

Dr. Williams testified that the cost to repair the damages caused by the storm and burst pipe would be approximately $100,000.00. Further, due to the damage to the property, RPMI was unable to use the parsonage for retreat purposes as extensively as in prior years. Dr. Williams estimates that RPMI loss of income from that source was around $40,000.00.

---

[7]See Defendant's Exhibit 9.

[8]See Defendant's Exhibit 12

## Conclusions of Law

In order to prevail under Alabama law on a claim of breach of contract, the plaintiff must prove 1) that there was a valid contract binding the parties, 2) the plaintiff's performance under the contract, 3) the defendant's nonperformance, and 4) resulting damages. *Shaffer v. Regions Financial Corp.*, 29 So. 3d 872, 880 (Ala. 2009)(quoting *Reynolds Metals Co. V. Hill*, 825 So. 2d 100, 105 (Ala. 2002).

First, the defendants offered evidence that Dr. Williams signed a no loss statement which stated that no damage was done to the property during the lapse in insurance. The court is unsure as to whether the defendants intended this as evidence that the damage to the parsonage did not occur or for impeachment purposes. Assuming that it was offered as evidence that the property was not damaged, the court is not persuaded by this. No additional evidence was offered in support of an assertion that the home was not damaged by the storm on April 27, 2011 or by the pipe on June 11, 2011. Also, the court takes Dr. Williams' testimony regarding the no loss statement as candid, in that it was done in order to have her original insurance policy on the property re-instated, even though the property had suffered damage.

Next, the court moves to the remaining issues in the case. The parties do not dispute that there was a valid contract binding them and creating in each certain rights and duties. Neither is there a dispute that RPMI had performed under the parties' contract by paying sufficient funds into the escrow account to cover the cost of the hazard insurance policy renewal. The question, then, is whether the defendants failed to perform under the contract and if so, whether the damages resulted from that failure.

While it is undisputed that the defendants did not pay the hazard insurance renewal premium in accordance with the parties' contract, blame for that nonperformance rests in large part with the plaintiffs. Prior to the end of the hazard policy term, LoanCare began efforts to renew the policy. First, it did so by making a series of telephone calls to an insurance company in an effort to gain renewal information. Then, after the end of the policy's term but while the original policy remained in force, LoanCare corresponded twice with Dr. Williams seeking assistance with respect to policy renewal information. Dr. Williams, however, ignored both of

LoanCare's requests for assistance.

"A party to a contract who has caused a failure of performance by the other party cannot take advantage of that failure." *Big Thicket Broad. Co. of Alabama, Inc. v. Santos*, 594 So.2d 1241, 1244 (Ala. Civ. App. 1991) (citing *Dixson v. C. & G. Excavating, Inc.*, 364 So.2d 1160, 1162 (Ala. 1978). Although the defendants did not perform under the contract, that nonperformance was caused by the plaintiffs' failure to respond to the defendants' request for information. Had Dr. Williams merely assisted LoanCare by giving it the name of the insurer, LoanCare could have performed under the contract, and the loss would have been avoided. Without Dr. Williams' assistance and cooperation, the defendants did not know who to pay to accomplish the renewal. The defendants' nonperformance was precipitated by the plaintiff. Under Alabama law, the plaintiff may not take advantage of that failure. *See id.*

Assuming *arguendo* that the defendants' failure to pay for the policy renewal was not brought about by the plaintiffs' action or inaction, even so, the plaintiffs cannot prevail. Although the hazard insurance policy term ended on April 24, 2011, the coverage under that policy was not cancelled until June 19, 2011. Both instances of damage to the property occurred prior to that time; the storm damage on April 27, 2011 and the burst pipe on June 11, 2011. Therefore, at the times that damage to the property occurred, the original insurance coverage was in force. Additionally, the plaintiffs were aware that the policy was in force, as Dr. Williams received the renewal notice which stated the new policy term and the cancellation notice which informed her that the policy would be cancelled effective June 19, 2011. Yet at no time did she call the insurance company to report the damage or file a claim with the insurance company. It follows that the damages did not result from the defendants' failure to pay the policy renewal premium. In short, the defendants' failure to pay the renewal premium was not the proximate cause of the plaintiffs' damages because the policy remained in force during the times that the losses were sustained. *Nance v. Southerland*, 79 So. 3d 612, 624 (Ala. Civ. App. 2010). The damages were brought about by RPMI and Dr. Williams' failure to file a claim for the losses.

Conclusion

For the foregoing reasons, judgment will enter in favor of the defendants. The court will enter judgment by way of a separate document.

Done this the 2nd day of July, 2014.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Robert E. Kirby, Jr., Plaintiffs' Attorney
Stephen B. Porterfield, Thomas B. Humphries,
and Cassandra J. Harris, Defendants' Attorneys
Cameron A. Metcalf, Debtor's Attorney